IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN HALLMAN | § | |
| | § | |
| V. | § | C.A. No. _____ |
| | § | |
| AETNA LIFE | § | |
| INSURANCE COMPANY | § | |

## **PLAINTIFF'S ORIGINAL COMPLAINT**

JOHN HALLMAN sues Defendant Aetna Life Insurance Company for violating the Employment Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et seq.* ("ERISA"). Despite repeated requests for his claim file so that he can appeal the wrongful denial of her health insurance claim, Aetna continues to ignore Mr. Hallman. He cannot appeal the decision without these documents. This Complaint challenges Aetna's 1) failure to disclose all relevant documents used in its decision to deny Mr. Hallman's benefits as required by ERISA; 2) failure to provide Mr. Hallman with a full and fair review of his claim; and 3) failure to provide a reasonable claims procedure that would yield a decision on his claim. Mr. Hallman seeks the documents required to permit him to perfect his appeal, to clarify and enforce her rights under the Plan and ERISA, and to recover costs and attorneys' fees as provided by ERISA.

## I.
## PARTIES

1. John Hallman is a resident citizen of Houston, TX.

2. Defendant, Aetna Life Insurance Company ("Aetna"), is a domestic or foreign insurance company licensed to do business and doing business throughout the

1

state of Texas and can be served with process through CT Corporation, 1999 Bryan St., Suite 900, Dallas, TX 75201-3136, or wherever it may be found.

## II.
## JURISDICTION AND VENUE

3. This action against Aetna arises under ERISA, 29 U.S.C. §1001 *et seq*. This Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1).

4. Venue is proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) because Aetna maintains business activity in and are in this district.

5. Pursuant to 29 U.S.C. §1132(h), this Complaint has been served upon the Secretary of Labor, Pension and Welfare Benefits Administration, at 200 Constitution Avenue N.W., Washington, D.C. 20210 and the Secretary of the Treasury at 111 Constitution Avenue N.W., Washington, D.C. 20024, by certified mail return receipt requested.

## III.
## STATEMENT OF FACTS

6. The State Bar's efforts to help its members secure quality insurance coverage goes back to 1948. This pursuit led to the formation of an insurance trust and an insurance exchange. The State Bar of Texas Insurance Trust makes available life, health, dental, disability and long-term care insurance to members of the State Bar of Texas, employees of law firms, and the eligible dependents of each.

7. The State Bar Trust contracted administration of insurance to Business Planning Concepts, Inc. dba Texas Member Benefits, Inc. ("Member Benefits") to administer the State Bar Trust and Texas Bar Private Insurance Exchange. In January 2014, the State Bar appointed Member Benefits the administrator of the Trust.

8. Member Benefits created a program of benefits, including health insurance benefits, that it made available to many solo practitioners and small firms throughout Texas.

9. Plaintiff is a partner at The James Law Firm, where he has dedicated his legal career to helping injured Texans rebuild their lives against the corporations and insurance companies that have harmed them.

10. Plaintiff was at all relevant times a covered participant under an employee welfare benefit plan created and administered by The Texas Professional Service Providers Benefits Trust ("Trust"). As a covered participant, Plaintiff was entitled to health care benefits under the Trust.

11. The Trust is the plan sponsor and Plan Administrator of the Trust.

12. Aetna is the insurer for the Trust.

13. Aetna is the claim administrator of the Trust.

14. Aetna purported to act as ERISA claims fiduciary with respect to participants of The Texas Professional Service Providers Benefits Trust, generally, and specifically, with respect to Mr. Hallman, within the meaning of ERISA.

## Policy Terms

15. The Aetna Policy provided both in-network and out-of-network benefits for medical treatment. It also provided benefits for prescription drugs.

16. The Policy established an allowable amount it would pay for prescription drugs. The Policy permitted Aetna to establish allowable amounts for medically necessary expenses payable for prescription drugs.

17. The Policy provided coverage for prescription drugs if it was medically necessary.

18. Aetna does not have the discretionary authority to determine a claimant's eligibility for health insurance benefits or to interpret the terms and provisions of the Policy.

## Plaintiff's Medical Treatment

19. Plaintiff suffers from psoriatic arthritis.
20. Ixekizumab, sold under the brand name Taltz, is an injectable medication for the treatment of autoimmune diseases, including psoriatic arthritis.
21. Plaintiff has been prescribed Taltz for treatment, and it has been highly effective.
22. His doctor prescribes it every four weeks, but the medicine slowly loses effectiveness as the final week approaches.
23. Out of medical necessity, his doctor has begun to prescribe the medicine every three weeks.

## Claim Denial

24. Aetna denied coverage for Taltz as not medically necessary.
25. Plaintiff's treating physician appealed the denial.
26. Aetna had a gynecologist review the appeal.
27. Aetna denied the appeal on May 17, 2023.

## Aetna Ignores Requests for Information and Documents

28. In the May 17, 2023 denial letter, Aetna promised the following:

> **Access to relevant information**
> You can request access to copies of all documents, records and other information about this claim for benefits. There's no charge for this. We will include the specific rule, guideline, protocol or other similar criterion we used in making our decision. It also includes the names of any clinical reviewers if applicable.

29. Mr. Hallman hired the undersigned counsel to assist him in obtaining more information and appealing Aetna's wrongful denial of the claim.

30. On October 4, 2023, undersigned counsel wrote to Defendants, advising that they represented Mr. Hallman in this claim and to provide the following documents:

    i. A complete copy of all documents, records, and other information relevant to Mr. Hallman's claim for benefits from the dates of her treatment to the present. This information should include all documents, records, and other information that was submitted, considered, or generated while making the benefits determination, regardless of whether the information was relied upon in making your determination. This should also include a copy of the relevant policy or certificate of insurance.

    ii. The full names and identities of all medically trained consultants, experts, or other professionals that had a role in evaluating Mr. Hallman's claim.

    iii. A complete copy of the Policy that was in effect on to Mr. Hallman's dates of treatment and the time of claims submission.

    The letter also stated in bold, "**To be clear, this is not an appeal. It is a request for information and documents.**"

    *Exhibit 1.*

31. Two different authorizations, including a HIPAA authorization, were also sent.

32. The letter was sent to the address Aetna listed in its May 17, 2023 denial letter for where to ask for claim documents.

33. The letter was also sent to two more addresses for Aetna.

34. The letter was also sent to the Trust.

35. Aetna did not respond.

36. On October 26, 2023, undersigned counsel made a second request for the same documents to Aetna. *Exhibit 2.*

37. Aetna did not respond.

38. Later that day, the undersigned counsel received a letter from Rawlings Corporation asking for more information about a "personal injury claim" on January 1, 2023.

39. Of course, there was no such claim.

40. On November 8, 2023, the undersigned counsel received a letter from Aetna employee Snehal "M." denying an "appeal".

41. Later that day, the undersigned counsel sent a third letter to Aetna explaining the following:

> **To be clear, this letter is NOT an appeal. It is a request for information and documents.** If this is unclear, please re-read until it is clear to you.

*Exhibit 3.*

42. The letter made a third request for the same documents to Aetna. *Exhibit 3.*

43. Aetna did not respond.

44. Aetna did not produce any documents.

45. Aetna's thirty (30) days to respond to Plaintiff's request for a copy of his Claim File expired on November 3, 2023.

46. Aetna will not respond unless it is forced to defend itself in this lawsuit.

47. Aetna will not produce Mr. Hallman's claim file unless it is forced to defend itself in this lawsuit.

48. Plaintiff is unable to effectively appeal Aetna's denial because Aetna has ignored his repeated requests for documents.

## ERISA Disclosure Requirements

49. Administrators have an obligation to provide information to Plan participants and beneficiaries. This obligation includes a duty to respond to written requests for

information about employee benefits and the documents relevant to a claim for benefits. Plan participants and beneficiaries have a cause of action if administrators fail to provide the requested information.

50. Specifically, 29 U.S.C. §1132(c) provides for penalties for an administrator's refusal to supply required information. 29 U.S.C. §1132(c) indicates:

    (1) ***Any*** administrator….[who fails to provide certain information]

    (B) who fails or refuses to comply with a request for any information which such administrator is ***required by this subchapter to furnish*** to ***a participant or beneficiary*** (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

51. The penalty is to be paid by any administrator who fails or refuses to comply with a request for information "which such administrator is required by this subchapter to furnish to a participant or beneficiary."

52. This penalty applies to the failure to provide the documents relevant to the Plan: "(4) The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."

53. In addition to the summary plan descriptions and other documents under which

the plan is operated, 29 U.S.C. §1029 provides that the Secretary of Labor may also prescribe what other documents should be furnished:

> (c) Format and content of summary plan description, annual report, etc., required to be furnished to plan participants and beneficiaries. The Secretary may prescribe the format and content of the summary plan description, the summary of the annual report described in section 1024(b)(3) of this title and ***any other report, statements or documents*** (other than the bargaining agreement, trust agreement, contract, or other instrument under which the plan is established or operated), ***which are required to be furnished or made available to plan participants and beneficiaries receiving benefits under the plan.***

[emphasis added]

54. Pursuant to §109(c) and 502(c), the Secretary has authority to establish the format and content of what documents are required to be produced "by this subchapter." Therefore, "Any administrator . . . (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to . . .may in the court's discretion be personally liable" for a §502(c) penalty.

55. The Secretary also has general authority under "this subchapter" to "prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this title. 29 U.S.C. §1135.

56. The Secretary of Labor's ERISA claim procedures regulations set out in 29 C.F.R. §2560.503-1 (h)(2)(iii) describe the documents an administrator must disclose upon written request.

57. To provide a full and fair review, a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

58. Whether a document, record, or other information is relevant to a claim for benefits is determined by reference to 29 C.F.R. §2560.503-1 (m)(8).

59. The Secretary explained at 29 C.F.R. §2560.503-1 (m)(8) that the following documents are relevant to the claim, and must be produced under ERISA:

    (8) A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information

    (i) Was relied upon in making the benefit determination;

    (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;

    (iii) Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or

    (iv) In the case of a group health plan or a plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

60. Aetna had an obligation to provide all the documents relevant to a claim that are required to be provided by the Department of Labor's ERISA claims regulations.

61. As claim administrator and insurer, Aetna had all the documents requested by Mr. Hallman. Moreover, Aetna was the only entity with any obligation to provide the documents who also had the documents he requested.

62. The Trust did not have Aetna's claim file in its possession.

63. To date, Aetna has failed to produce Mr. Hallman's claim file or any documents related to his claim.

64. The appeal deadline in this claim could run as early as 180 days from the date that

Mr. Hallman received the May 17, 2023 denial letter.

65. In the Fifth Circuit, a plaintiff may submit additional evidence in support of his claim even after appeals have been exhausted. UnitedHealthcare has an obligation to review additional information. ("The administrative record consists of relevant information made available to the administrator prior to the . . . filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it".) *Vega v. National Life Ins. Services, Inc.*, 188 F.3d 287, 300 (5th Cir. 1999). *Vega* has been repeatedly upheld by the 5th Circuit, most recently in *Ariana M. v. Humana Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018).

66. Aetna's failure to respond to Mr. Hallman's requests has prohibited him from determining his Plan rights and exhausting his ERISA administrative remedies.

## IV.
## CLAIMS & CAUSES OF ACTION
### A. Breach of Fiduciary Duty

67. The Texas Professional Service Providers Benefits Trust claims that it is governed by ERISA. 29 U.S.C. §1001, *et. seq*. The Trust is the plan sponsor and Plan Administrator. Aetna is the insurer and/or Claims Administrator of the Trust.

68. As Plan fiduciary, Aetna is obligated to handle claims for the benefit of the Plan and Plan beneficiaries, and to deliver the benefits promised in the Plan. It is also obligated as a fiduciary to conduct its investigation of a claim in a fair, objective, and evenhanded manner.

69. Instead, Aetna failed to provide Mr. Hallman with the information required by ERISA to pursue its unsupported adverse benefit denial.

70. As a direct, proximate, and foreseeable result of Aetna's misconduct, Mr. Hallman has been injured and is entitled to equitable and other relief.

71. Mr. Hallman is entitled under 29 U.S.C. §1132 to an order requiring Aetna to provide him with the Claim File and the requested documents.

72. Mr. Hallman's pursuit of this matter benefits all members of The James Firm and the Trust, particularly those individuals unaware of ERISA's disclosure requirements, the timeframes for those disclosures, and how to effectively appeal an adverse benefit decision.

## V.
## CLAIM FOR ATTORNEYS' FEES & COSTS

73. Plaintiff seeks an award of his reasonable attorneys' fees incurred and to be incurred in the prosecution of this matter. He is entitled to recover those fees, together with his costs of court, pursuant to 29 U.S.C. §1132(g).

## VIII.
## PRAYER

John Hallman, Plaintiff, respectfully prays that upon trial of this matter or other final disposition, this Court find in his favor and against Aetna, and issue judgment against Aetna as follows:

    A.    That Aetna be ordered to produce all requested documents within 7 days of any final judgment;

    B.    That Aetna pay all reasonable attorney's fees incurred and to be incurred by Plaintiff in obtaining the relief sought herein, along with the costs associated with the prosecution of this matter; and

    C.    All such other relief, whether at law or in equity, to which Plaintiff may show himself justly entitled.

Respectfully submitted,

By: _/s/ Amar Raval_
Amar Raval, TBA #24046682
S.D. No. 619209
Berg Plummer Johnson & Raval LLP
3700 Buffalo Speedway, Suite 1150
Houston, TX 77098
(713) 526-0200
(832) 615-2665 (Fax)
araval@bergplummer.com

ATTORNEYS FOR PLAINTIFF